Filed 11/24/25 (opinion on remand from Supreme Court)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B322752 |
| Plaintiff and Respondent, | Santa Clara County |
| v. | Super. Ct. No. F1765160 |
| THE NORTH RIVER INSURANCE COMPANY, | |
| Defendant and Appellant; | |
| BAD BOYS BAIL BONDS, | |
| Real Party in Interest and Appellant. | |

APPEAL from an order of the Superior Court of Santa Clara County, My-Le Jacqueline Duong, Judge. Reversed and remanded.

Jefferson T. Stamp for Defendant and Appellant.

James R. Williams and Tony Lopresti, County Counsel, Kavita Narayan, Chief Assistant County Counsel, Christopher A. Capozzi, Sterling S. Larnerd, and Hannah M. Godbey, Deputy County Counsel, for Plaintiff and Respondent.

—————————————

When a defendant on bail inexcusably fails to return to court as ordered, the trial court must declare the bail bond is forfeited. The bail bond company has 180 days from the forfeiture notice to produce the defendant or to demonstrate why the court should set aside the forfeiture. This interval is called the appearance period. For good cause, the court can extend the appearance period for another 180 days. The bail company may file a motion to vacate the forfeiture within the appearance period, and the court may hear the motion within 30 days of the expiration of the appearance period. For good cause, the court may extend the 30-day period. (*People v. The North River Insurance Company* (2025) 18 Cal.5th 1, 8–9 (*North River*).)

The Supreme Court remanded the case to us. We adopt Justice Kruger's concurring analysis. (*North River, supra,* 18 Cal.5th at pp. 23–32.) This analysis is not binding authority, because the majority of the high court did not speak to the issue she addressed. This analysis is, however, persuasive. It is *highly* persuasive. We remand the case to the trial court for the decisionmaking this analysis requires. All citations are to the Penal Code.

The prosecution filed a complaint alleging Geovanni Quijadas Silva committed a crime. North River posted a $100,000 bond for Silva's release, but Silva skipped a required hearing on February 22, 2018. The trial court forfeited his bond and mailed notice of the forfeiture on February 26, 2018. The forfeiture would become final in 180 days (plus five days for mailing), on August 30, 2018, unless the bail company could get Silva to court by then.

North River began looking for the fugitive. The court granted North River's two requests for extensions. March 20,

2019 was the final day for this new interval. On that day, North River said it had secured Silva in Mexico and so moved to vacate the forfeiture and exonerate its bond.

North River's exoneration motion—its motion to get its money back—was under section 1305, subdivision (d) or (g). In the alternative, it moved to toll time under section 1305, subdivision (e) or (h).

North River's motion included a declaration by an investigator who said he found Silva in Mexico on March 15, 2019. The investigator detained Silva in the presence of a Mexican law enforcement officer, who identified Silva.

North River moved for a continuance. The prosecution did not oppose this motion, and the court continued the matter on April 26, 2019.

On June 8, 2019, the prosecution filed a brief opposing the motion to vacate the forfeiture. The prosecution did not want the court to return North River's money. The prosecution's logic was that the prosecutors could not make an extradition decision within the appearance period—which is to say by March 20, 2019. The prosecution also refused to *decline* to extradite within that period. On extradition, then, the prosecution would not say yes and it would not say no. Its decision was not to decide.

The prosecution noted North River served the motion on the last day of the appearance period and, moreover, served it on an inconvenient office—an office where the prosecutor of record and the prosecutor who handled contested bail motions did not work. The prosecution did acknowledge the district attorney's office stamped the motion "Received" on March 20, 2019, and the pertinent prosecutor knew about the contested bail motion "at

some point" before April 12, 2019.  The prosecution nonetheless insisted it had yet to make an extradition decision.

In reply, North River said the prosecution violated due process by not deciding about extradition and by not saying whether it would agree to tolling.  North River alternatively argued the court should toll time under section 1305, subdivision (h), or should grant a continuance under section 1305, subdivision (j).

On June 28, 2019, the trial court denied North River's motion.  It found the matter was untimely because the prosecution had not made a decision about extradition by the end of the appearance period, March 20, 2019, and no statutory provisions required the prosecution to make a decision by then.  The court also denied the alternate requests to toll the forfeiture period or to continue the matter.  The court did not require the prosecution to make an extradition decision.

On July 10, 2019, the court entered a judgment of $100,000 against North River, which appealed.

On August 9, 2022, the appeal became ours to decide.

We initially affirmed.  On rehearing, however, we ruled the case should be reversed and remanded.  Our view was the trial court either had to insist the prosecution make an extradition decision or to grant a continuance so the prosecution had time to decide.  (*People v. The North River Ins. Co.* (2023) 94 Cal.App.5th 663, 668, 670.)

The Supreme Court held we misinterpreted section 1305 of the Penal Code.  This section does *not* authorize the trial court to compel the prosecution to make an extradition decision or require the court to continue the hearing date on the motion to vacate

4

until the prosecution makes such a decision. (*North River, supra*, 18 Cal.5th at pp. 8–9, 12–23.)

The high court refrained from deciding whether a superior court *may* extend the time for the prosecution to make an extradition decision by continuing the hearing on the motion to vacate. (*North River, supra*, 18 Cal.5th at pp. 19–20 & fn. 5.)

In her concurrence, Justice Kruger directly addressed that issue. "The statute may not allow for indefinite tolling for prosecutors to make their decisions about whether to extradite, but when a fugitive is located during the appearance period, the statute is reasonably read to build in a limited period of time for prosecutors to decide what to do. The statute also permits (even if it does not require) the trial court to extend that time for good cause. (Pen. Code, § 1305, subd. (j).) In this way, the statute goes at least part of the way toward facilitating timely extradition decisions, and thus preserving bail companies' incentives to persist in their efforts to locate fugitives abroad." (*North River, supra*, 18 Cal.5th at p. 25 (Kruger, J., concurring).)

Under this analysis, which we adopt, the trial court erred. The trial court "denied North River's motion to vacate based primarily on its view that the extradition decision had to be made within the appearance period; the court then rejected a motion to continue under Penal Code section 1305, subdivision (j), evidently because it believed that it lacked the authority to continue the hearing if the prosecutors did not agree." (*North River, supra*, 18 Cal.5th at pp. 31–32 (Kruger, J., concurring).) As Justice Kruger explained at some length, however, a proper reading of the statute gave the trial court just this power. (*Id*. at pp. 25–32.)

The prosecution argues the majority did not share Justice Kruger's analysis. That is not what the majority wrote. Rather,

the high court acknowledged Justice Kruger's concurrence and stated the "majority opinion expresses *no views* on those questions." (*North River, supra*, 18 Cal.5th at p. 20, fn. 5, italics added.)  We interpret this to mean the majority expressed no views on those questions.

## DISPOSITION

We remand the case for the trial court to exercise the power it possesses under Justice Kruger's reading of the law, which we share.  Both sides shall bear their own costs.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.

6